UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

SHEILA LOUANN CAGLE,           )
                               )
    Plaintiff,                 )
                               )
v.                             )   Case Number: 6:13-cv-01373-JHE
                               )
CAROLYN W. COLVIN, ACTING      )
COMMISSIONER OF SOCIAL         )
SECURITY ADMINISTRATION,       )
                               )
    Defendant.                 )

### MEMORANDUM OPINION[1]

Plaintiff Sheila Louann Cagle ("Cagle") seeks review, pursuant to 42 U.S.C. §§ 405(g), 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for Supplemental Security Income ("SSI") benefits. Cagle timely pursued and exhausted her administrative remedies. The case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

### I. Factual and Procedural History

Cagle was a twenty-seven year old female at the time of her hearing before the Administrative Law Judge ("ALJ") on February 13, 2012. (Tr. 52). Cagle has a tenth-grade education, (tr. 165), and previously worked as a short order cook, waitress, and cashier. (Tr. 191-194).

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 13).

Cagle applied for SSI on September 7, 2010, alleging an initial onset date of February 1, 2009. (Tr. 141). Cagle's application was denied on January 26, 2011, (tr. 80-82), and Cagle requested a hearing before an ALJ. (Tr. 89). After a video hearing, the ALJ denied Cagle's claim on February 24, 2012. (Tr. 24-41). Cagle sought review by the Appeals Council, but the council denied her request on May 22, 2013. (Tr. 1-3). On that date, the ALJ's decision became the final decision of the Commissioner. Cagle then initiated this action on July 23, 2013. (Doc. 1).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *See Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). This court will determine that the ALJ's decision is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* Substantial evidence is "more than a scintilla, but less than a preponderance." *Id.* Factual findings supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo*, "because no presumption of validity attaches to the [ALJ's] determination of the proper legal standards to be applied." *Davis v. Shalala*, 985 F.2d

---

[2] In general, the legal standards applied are the same whether a claimant seeks Disability Insurance Benefits ("DIB") or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, the ALJ's decision must be reversed. *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for SSI as well as establish entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.908.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4)(i–v). The Commissioner must determine in sequence:

(1) whether the claimant is currently engaged in substantial gainful activity;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4) whether the claimant can perform his past work; and
(5) whether the claimant is capable of performing any work in the national economy.

*See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2010); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps on and two, [she] will

---

[3] The "Regulations" promulgated under the Act are listed in 20 C.F.R. Parts 400 to 499, revised April 1, 2013.

automatically be found disabled if [she] suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform [her] work, the burden shifts to the Secretary to show that the claimant can perform some other job."  *Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993), *overruled in part on other grounds*, *Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999); accord *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner must further show that such work exists in the national economy in significant numbers.  *Foote*, 67 F.3d at 1559.

### IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Cagle has not engaged in substantial gainful activity since the application date.  (Tr. 26). At Step Two, the ALJ found Cagle had the following severe impairments: vasovagal syndrome, seizure disorder, multiple sclerosis (relapsing-remitting), headaches, an adjustment disorder with anxiety and depressed mood, and polysubstance abuse.  (*Id*.)  At Step Three, the ALJ found Cagle does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 27-30).

Before proceeding to Step Four, the ALJ determined Cagle's residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments.  *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined Cagle has the RFC to perform medium work as defined in 20 C.F.R. 416.967(c) except she can never climb any ladders, ropes, or scaffolds; can only frequently climb ramps/stairs, balance, stoop, crouch, kneel and crawl; must avoid all exposure to hazards like dangerous machinery and unprotected heights; must avoid concentrated exposure

to extreme heat; and is limited to employment at low-stress jobs with only occasional contact with the public. (Tr. 30-31). In reaching this conclusion, the ALJ considered Cagle's physical examinations, treatment, diagnostic test results and other evidence contained in medical records and treatment records from her physicians. (Tr. 30-39).

At Step Four, the ALJ determined Cagle is unable to perform any past relevant work. (Tr. 39). At Step Five, the ALJ determined, based on Cagle's age, education, work experience, and residual function, jobs exist in significant numbers in the national economy Cagle can perform. (Tr. 39-40). Therefore, the ALJ determined Cagle is not disabled and denied her claim. (Tr. 41).

## V. Analysis

This Court is limited in its review of the Commissioner's decision in that the Commissioner's findings of fact must be reviewed with deference. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Graham v. Bowen*, 790 F.2d 1572, 1574-75 (11th Cir. 1986)). In contrast to factual findings, the Commissioner's conclusions of law are subject to an "exacting examination" or *de novo* review. *See Martin*, 894 F.2d at 1529 (citing *Graham*, 790 F.2d at 1574-75) ("The Secretary's failure to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal.") (citations omitted). In particular, this court has a "responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *See Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[4] However, the court "abstains

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted). The court must review the Commissioner's decision and determine whether it is supported by substantial evidence and if he applied the correct legal standards. *Wilson*, 284 F.3d at 1221.

Cagle contends the ALJ's decision is not supported by substantial evidence and should be reversed and remanded because the ALJ: (1) improperly discounted the opinion of Dr. Christopher LaGanke and (2) incorrectly examined the vocational expert. (Doc. 12 at 8).

### A.  The Administrative Law Judge Properly Weighed Treating Physician Testimony

Cagle contends the ALJ's decision is not supported by substantial evidence because the ALJ improperly discounted the opinion of Cagle's treating physician, Dr. LaGanke. (Doc. 12 at 8). Under 20 C.F.R. § 404.1527(c)(2), a treating physician's opinion is given controlling weight where it is "supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Accordingly, "[t]he ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause to reduce the weight given to a treating physician's opinion exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004).

The parties do not dispute Dr. LaGanke is a treating physician or that the ALJ articulated reasons for giving less weight to his opinion. (Doc. 12 at 8-9; doc. 13 at 6). Cagle asserts, however, the ALJ erred in discrediting Dr. LaGanke's opinion on grounds not founded in the

6

evidence.  (Doc. 12 at 10).  The ALJ's reasons for discounting the opinion included: (1) inconsistency with medical evidence; (2) contradictions of Drs. Moizuddin, Norwood and Reddy; (3) infrequency of treatment visits; (4) treatment was inconsistent with that pursued if Cagle were truly disabled; and (5) the uncritical reliance upon Cagle's statements, even though there were good reasons for questioning the reliability of Cagle's complaints. (Tr. 31-39).

Cagle contends "Dr. Laganke's [sic] opinion is supported by not only physical examination of [Cagle]'s impairments, but also by diagnostic testing including MRIs"; it is consistent with the opinion of Dr. Moizuddin; and the ALJ's conclusion his opinion "is based on anything other than his own examination and testing" is "mere speculation." (Doc. 12 at 10-11).[5] The Commissioner counters, stating Dr. LaGanke's opinion is not supported by the medical evidence, including the MRIs; it is inconsistent with the majority of the consultative physicians' findings; and the ALJ's conclusions regarding Dr. LaGanke's reliance on Cagle's subjective testimony is based on the fact his opinion is not supported by the medical evidence and treatment history.  (Doc. 13 at 9-12).

The opinion in question appears in "Physical Capacities Evaluation" ("PCE") and "Clinical Assessment of Pain" forms drafted by Cagle's attorneys and filled out by Dr. LaGanke. (Tr. 383-85).  Dr. LaGanke's PCE stated Cagle could lift ten pounds occasionally and less

---

[5] Cagle also asserts it was "egregious error" to dismiss Dr. LaGanke's opinion without first contacting Dr. LaGanke for clarification. (Doc. 12 at 12).  However, she cites to a Social Security Ruling addressing only opinions speaking to issues reserved to the Commissioner, which is not applicable here, (*id.*) (citing S.S.R. 96-5p), and to the regulation on evidence in general, which states the Commissioner will make "every reasonable effort to obtain evidence," (*id.*) (citing 20 CFR § 416.912(e)).  Cagle cites no law to support the conclusion there is a duty on the facts of her case for an ALJ to call a physician for clarification of his conclusory statements, nor any law stating failure to obtain clarification of a physician's medical opinion is reversible error.  Cagle presents no evidence to show the ALJ did not contact Dr. LaGanke for clarification and cites no law showing the ALJ was required to state what measures were taken to acquire such clarification.

weight frequently; could only sit two hours and only stand or walk for one hour during an eight hour workday; required assistance of a cane "to ambulate even minimally in a normal workday"; could occasionally do arm and leg controls and reach overhead; could never do climbing, gross or fine manipulation, bending, or stooping; and could not operate motor vehicles or work around hazardous machinery or dust, fumes, and allergens. (Tr. 383). The pain assessment stated Cagle's pain was such as to be distracting to adequate performance of daily activities or work and physical activity would greatly increase it to the point of causing distraction from or abandonment from tasks. (Tr. 385). None of these opinions are directly supported by citation to medical evidence and are conclusorily "stated" merely by the checking of a box or circling of a letter or number on a form.

     The ALJ explicitly discounted the severity of the limitations appearing in Dr. LaGanke's opinion because they were not supported by the evidence. (Tr. 38). Dr. LaGanke's treating examinations found Cagle was mostly normal except for some loss of strength, decreased sensation, and ataxic gait. (Tr. 261-79, 386-99). An emergency room examination in 2010 found no loss of strength and a normal gait, (tr. 299-302), and Dr. Norwood's consultative examination found no loss of strength and some evidence of malingering regarding Cagle's strength and ataxic gait, (tr. 346). The MRIs LaGanke ordered and to which Cagle points as evidence for his opinion were mostly normal as well. Dr. LaGanke's review of MRI scans in February 2009 indicated the cranial MRI scan was normal, (tr. 261), and the MRIs of Cagle's thoracic and cervical spine, which Dr. LaGanke ordered in May 2009, both came back negative with no abnormalities, (tr. 265, 267). The MRI of Cagle's brain taken in May 2009 showed two tiny foci of increased signal intensity suggesting a lacunar infarction, (tr. 266), but a subsequent MRI for comparison in January 2010 found the two foci decreased in intensity with no new

abnormalities, (tr. 272). By September 2009, "Dr. LaGanke [had] reviewed [Cagle's] scans and determined that she did not have 'lacunar infarcts' . . . ." (Tr. 271).

LaGanke's assertion Cagle could only sit for two hours in an eight hour period is inconsistent with Cagle's own report she sits for much of the day at home, (tr. 180), a statement supported by her aunt's similar report, (tr. 172). LaGanke's assertion Cagle required a cane "to ambulate *even minimally* in a normal workday," (tr. 383) (emphasis added), is contradicted by his own failure to prescribe her one. (Tr. 70, 261-79, 383, 386-99). The ALJ explicitly stated the evidence did not support Cagle's use of a walker and Cagle had admitted it was not prescribed. (Tr. 36). Furthermore, Cagle's own testimony was she only uses a walker a few days a week, (tr. 70), and the ALJ stated considerable grounds for believing Cagle is exaggerating her symptoms, (tr. 35-36). Cagle also asserts Dr. Moizuddin's report is consistent with LaGanke's opinion because his report states "needs a walker to stabilize herself" and "clearly cannot attempt heel or toe walk," (tr. 342), but she ignores Moizuddin's statement in the same report Cagle "does not use an assistive device," (tr. 343). She similarly ignores the inconsistencies with the opinions and records of other physicians. (Tr. 299-302, 346).

Cagle also asserts the ALJ's determination LaGanke's report was based on her subjective statements is "mere speculation" because there is "nothing in the record to suggest that Dr. LaGanke based his opinion on anything other than his own examination and testing." (Doc. 12 at 11). Further, she states, "when a physician is instructed to give his opinion based upon his examination and he does so, it is assumed to be the doctor's own professional assessment." (doc. 12 at 11) (citing *Hale v. Bowen*, 831 F.2d 1007, 1012 n.7 (11th Cir. 1987)). The *Hale* court, however, specifically noted there was no evidence the claimant could do more than that stated in the PCE. *Id.* at 1012. Here, on the other hand, the ALJ pointed to the fact LaGanke's report was

9

not consistent with the other physicians' reports or his own treatment of Cagle. (Tr. 38). Despite Dr. LaGanke's subsequent opinion of debilitating pain and medical conditions, Dr. LaGanke's treatment of Cagle included an extended period of nontreatment from February 2010 to January 2011, (tr. 32, 261-79, 386-99); other treating physicians' records show only conservative treatment inconsistent with extreme disability, (tr. 379-82, 423-30); and Cagle herself testified the medicines helped with the pain, (tr. 64-65, 67). These inconsistencies support the conclusion LaGanke's opinion was more extreme than the evidence supports.

The ALJ's decision to discount Dr. LaGanke's opinion is supported by substantial evidence.

### B.  The Administrative Law Judge Properly Examined the Vocational Expert

"In order for a vocational expert's ("VE") testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). Cagle argues, the ALJ's failure to ask the VE a hypothetical question regarding Cagle's utilization of a cane, is a fatal error and demands relief.

Cagle relies on *Cowart v. Schweiker*, 662 F.2d 731 (11th Cir. 1981), which requires an ALJ to "'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts,' ensuring that both favorable and unfavorable facts are elicited." (Doc. 12 at 14) (quoting *Cowart*, 662 F.2d at 735). While it is true that the ALJ has a basic obligation to develop a full and fair record, the obligation rises to this special duty referred to above only "when an unrepresented claimant unfamiliar with hearing procedures appears before him." *Cowart*, 662 F.2d at 735. However, at the ALJ hearing, Cagle was represented by Willliam Hanlin, (tr. 48); therefore, *Cowart*'s special duty was not imposed. At the hearing, the ALJ asked if Cagle's

attorney had any other questions, who responded he had "[n]o questions . . . just a closing comment or two." (Tr. 76). The reasoning behind the elevated duty is to make sure claimants are not "prejudiced by the lack of counsel," *Cowart*, 662 F.2d at 735, not to do claimant's counsel's work for him.

The argument the ALJ's RFC assessment did not properly encompass Cagle's limitations is unfounded. Cagle argues, because of her assertion she needed a cane to get around and the fact Dr. LaGanke wrote it on the physical capacities evaluation form, the ALJ was required to add that limitation into both a hypothetical to the VE and into the RFC assessment. However, as noted above, Cagle's need for a cane was not supported by medical evidence and the ALJ's reduction in weight to LaGanke's PCE was supported by substantial evidence clearly articulated. "[T]he ALJ's hypothetical need not include a claimant's asserted impairments that are not supported by the medical evidence." *Vesy v. Astrue,* 353 F. App'x 219, 225 (11th Cir. 2009).

The hypothetical question was proper. The ALJ asked the vocational expert what jobs Cagle could perform if she had postural limitations, such as never climbing ladders, ropes or scaffolds, as well as environmental, non-exertional mental limitations, such as limited contact with the public, ability to carry out short, simple tasks and the need for infrequent changes within the workplace. (Tr. 72-75). The ALJ also asked the vocational expert what kind of work Cagle could do if her subjective limitations were believed. (Tr. 75-76). The vocational expert's responses to these hypotheticals, that Cagle could find a job if she were limited to medium and light exertional work but could not find a job if her recounting of her symptoms was believed, is substantial evidence to support the denial of benefits in light of the ALJ's determination that Cagle could perform medium work and her subjective account of her symptoms was not credible.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for supplemental security income be **AFFIRMED** and this action is due to be **DISMISSED WITH PREJUDICE.** A separate order will be entered.

DONE this 30th day of September 2014.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE